UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X

CHARLES SALDARRIAGA,

                             *Plaintiff,*

        - against -

THE CITY OF NEW YORK, SERGEANT UMAR B.
MIRZA (Shield No. 4845), POLICE OFFICER
FRANCISCO ESPINAL (Shield No. 20764); and
OFFICERS JOHN DOE 1–5;

                             *Defendants,*

----------------------------------------------------------------------X

Index No.

**COMPLAINT**

JURY DEMAND

Plaintiff CHARLES SALDARRIAGA, proceeding *pro se,* files this Complaint against The City of New York (The "City"), Sergeant Umar B. Mirza ("Sgt. Mirza"), Police Officer Francisco Espinal ("P.O. Espinal"), Officers John Doe 1–5 (the designations "John Doe 1–5" being fictitious, as their true names are presently unknown) (collectively, "Defendants"), and alleges as follows:

## PRELIMINARY STATEMENT

1.      This is a civil rights action in which Plaintiff seeks relief for the violations of his rights secured by 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the United States Constitution, and the laws and Constitution of the State of New York.

2.      The claims arise from events beginning on or about September 8, 2024, in Queens County, New York, in which employees of the New York City Police Department ("NYPD"), acting under color of state law, intentionally and willfully subjected Plaintiff to, among other things, false arrest, malicious prosecution, fabrication and/or omission of material evidence, and the unreasonable seizure and prolonged retention of his vehicle and license plates.

3.      As a result of Defendants' conduct, Plaintiff suffered loss of liberty, emotional distress, and financial and non-economic harm, including damage to and loss of use of, the vehicle he was operating, and seeks special, compensatory, and punitive damages, together with costs and such other and further relief as the Court deems just and proper. If counsel appears for Plaintiff, he reserves the right to seek attorney's fees pursuant to 42 U.S.C. § 1988.

## JURISDICTION AND VENUE

4.      Jurisdiction is conferred upon this Court under 28 U.S.C. §§ 1331 and 1343, as this action seeks redress for the violation of Plaintiff's constitutional and civil rights.

5.      Venue is proper in this District under 28 U.S.C. § 1391 because the events giving rise to this action occurred in Queens, New York, within the Eastern District of New York, and Plaintiff also resides in this District.

## NOTICE OF CLAIM

6.      Pursuant to New York General Municipal Law § 50-e, Plaintiff has duly and properly served a Notice of Claim upon the City of New York. The New York State Supreme Court, Queens County, entered a stipulation and order deeming Plaintiff's Notice of Claim timely served *nunc pro tunc*.

7.      More than thirty (30) days have elapsed since service of the Notice of Claim, and the City has neglected or refused to adjust or settle the claim.

8.      Plaintiff appeared for and completed a hearing pursuant to General Municipal Law § 50-h.

9.      This action is timely under General Municipal Law § 50-i as it has been commenced within the applicable statutory period following the events giving rise to Plaintiff's state-law claims.

## PARTIES

### A. Plaintiff Charles Saldarriaga

10.    Plaintiff Charles Saldarriaga is a United States citizen residing in Queens County, New York.

11.    He brings this action under 42 U.S.C. § 1983 for violations of his Fourth and Fourteenth Amendment rights arising from a September 8–9, 2024 stop, arrest, detention, prosecution, and vehicle seizure.

12.    As a result of the conduct alleged herein, Plaintiff suffered loss of liberty, emotional distress, financial harm (including transportation and court-related expenses), and property damage and loss of use of a vehicle.

### B. Defendant City of New York

13.    The City of New York is a municipal corporation organized under New York law.

14.    The City acts through the New York City Police Department (NYPD) and is responsible for the policies, practices, training, supervision, and discipline of NYPD personnel.

15.    As alleged in the *Monell* claim below, the City's deliberate indifference and failures in policy and training, including failures regarding (a) handling of medical tint exemptions, (b) vehicle and property seizure procedures, and (c) evidence vouchering and release protocols, which caused Plaintiff's injuries.

16.    Upon information and belief, prior lawsuits, complaints, and internal data placed the City on notice of related risks.

### C. Defendant Sergeant Umar B. Mirza

17. Defendant Sgt. Umar B. Mirza was, at all relevant times, an NYPD sergeant assigned to the 108th and/or 114th Precincts, acting under color of state law and within the scope of employment. He is sued in his individual capacity.

18. Sgt. Mirza directed and participated in Plaintiff's detention and arrest, challenged the validity of the medical tint exemption displayed in the vehicle, seized the vehicle and its license plates, and authorized or approved their vouchering.

**D. Defendant Police Officer Francisco Espinal**

19. Defendant P.O. Francisco Espinal was, at all relevant times, an NYPD officer assigned to the 108th Precinct, acting under color of state law and within the scope of employment. He is sued in his individual capacity.

20. P.O. Espinal initiated the traffic stop, demanded documentation, and placed Plaintiff under arrest.

**E. Officers John Doe 1–5**

21. Officers John Doe 1–5 were NYPD officers from the 108th and/or 114th Precincts whose identities are presently unknown. Each acted under color of state law and participated in, or failed to intervene in, the violations described herein.

## FACTUAL ALLEGATIONS

22. On September 8, 2024, while driving on 21st Street and Hoyt Avenue in Queens, Plaintiff observed a marked NYPD patrol vehicle behind him.

23. Plaintiff turned right onto Astoria Blvd S; the patrol vehicle activated its lights.

24. Plaintiff immediately pulled over in front of 20-98 Astoria Park S.

25.     Several NYPD officers exited the patrol vehicle and approached.

26.     Officer Espinal approached the driver's side; Officer John Doe approached the passenger's side, and Sgt. Mirza stood behind.

27.     Officer Espinal requested Plaintiff's license, registration, and insurance, all of which were valid and current.

28.     When Plaintiff asked why he had been stopped, Officer Espinal stated it was because of the window tint.

29.     Plaintiff advised the officers that a DMV medical tint exemption was displayed on the windshield.

30.     Officer Espinal examined the exemption from outside the vehicle and then returned to the patrol car.

31.     Plaintiff observed Officer Espinal and Sgt. Mirza conferring with one another before Officer Espinal returned to the vehicle Plaintiff was operating.

32.     Officer Espinal returned to the vehicle and took a picture of the exemption.

33.     Sgt. Mirza then approached and asked Plaintiff for the informational letter or mailing envelope associated with the exemption.

34.     Plaintiff explained that the informational letter and mailing envelope were at home and would take time to retrieve.

35.     Plaintiff also noted that the exemption itself, which was visibly displayed on the windshield, was DMV-issued and contained all identifying and validating information.

36.    Plaintiff waited while the officers discussed the matter.

37.    Despite Plaintiff's cooperation and the visible DMV exemption, Officer Espinal ordered Plaintiff out of the vehicle, and Plaintiff complied.

38.    At the direction of Sgt. Mirza, Officer Espinal placed Plaintiff in handcuffs.

39.    Sgt. Mirza stated that if Plaintiff could provide proof of legitimacy, he would release him.

40.    While handcuffed, Plaintiff stated that the officers were making a mistake.

41.    Sgt. Mirza responded that the charges would be explained at the precinct and incorrectly asserted that Plaintiff's DMV medical tint exemption "was no good."

42.    After several minutes of waiting, additional officers appeared at the scene.

43.    Plaintiff was eventually placed in the rear of the patrol vehicle.

44.    Sgt. Mirza then entered and drove away the vehicle Plaintiff had been operating.

45.    Plaintiff was not offered an opportunity to secure the vehicle or contact someone to pick it up.

46.    Plaintiff was transported to the 114th Precinct for processing.

47.    At the precinct, Plaintiff was fingerprinted, photographed, and questioned.

48.    Plaintiff's last name was recorded incorrectly as "Sandarriaga."

49.    Plaintiff's brother arrived at the precinct to retrieve the vehicle but officers refused to release it.

50.     Plaintiff observed Sgt. Mirza show the exemption to other officers and question its validity.

51.     Officer Espinal informed Plaintiff that the exemption was "invalid" because the numbers printed at the bottom represented an expiration date.

52.     Plaintiff later confirmed with the DMV Medical Review Unit that the numbers were form identifiers and not an expiration date.

53.     At approximately 1:00 a.m. on September 9, 2024, Plaintiff was released with a Desk Appearance Ticket ("DAT").

54.     Plaintiff later returned to the precinct to pick up the vehicle.

55.     The vehicle was released, but Plaintiff observed new damage inside the vehicle.

56.     When Plaintiff reported the damage, officers instructed him to file a complaint with the Civilian Complaint Review Board ("CCRB").

57.     On September 17, 2024, Plaintiff filed a CCRB complaint. The CCRB later referred the matter to the NYPD Internal Affairs Bureau ("IAB") for investigation.

58.     After returning home, as Plaintiff parked the vehicle, he discovered that the license plates from the vehicle were missing.

59.     The precinct released the vehicle without its license plates.

60.     Without plates, the vehicle could not be lawfully operated.

61.     Plaintiff was effectively deprived of the vehicle's lawful use.

62.     Plaintiff immediately returned to the precinct by rideshare.

63.     Officers informed him that the plates had been vouchered as evidence and the Property Clerk invoice listed N.Y. Penal Law § 175.10 ("Falsifying Business Records").

64.     Plaintiff made multiple unsuccessful attempts to retrieve the plates.

65.     Precinct staff told Plaintiff that only Sgt. Mirza could authorize the release of the plates, otherwise he would have to go to DMV to get new plates.

66.     Plaintiff made repeated attempts to reach Sgt. Mirza and Officer Espinal by phone and in person.

67.     Plaintiff then went to the DMV to request replacement plates.

68.     DMV personnel informed Plaintiff that replacement plates could not be issued unless he obtained a lost or stolen police report.

69.     When Plaintiff returned to the precinct to request a lost or stolen report, officers refused to issue one, stating that the plates were not lost or stolen but instead had been vouchered as "evidence".

70.     Plaintiff was unable to obtain replacement plates because DMV required an NYPD lost or stolen report, and officers refused to issue one on the ground that the plates had been seized and incorrectly classified under a felony statute.

71.     Because DMV could not issue replacement plates and NYPD withheld the seized plates, Plaintiff could not lawfully operate the vehicle during this period.

72.     After continued effort, Plaintiff eventually reached Sgt. Mirza, who acknowledged the matter and reclassified and voided the vouchered license plates.

73.     Plaintiff appeared for arraignment on September 25, 2024, and for several subsequent court appearances.

74.     All charges were dismissed and sealed on January 15, 2025.

75.     At no time did any officer measure the window tint using a DMV-approved tint meter, nor was Plaintiff ever provided with any tint-percentage reading.

76.     Plaintiff filed a Notice of Claim pursuant to General Municipal Law § 50-e and later completed a General Municipal Law § 50-h hearing.

77.     As a result of these events, Plaintiff experienced emotional distress, humiliation, property damage, loss of use of the vehicle and plates, lost time, and related harm.

### CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### False Arrest and Unlawful Detention Under 42 U.S.C. § 1983
*(Against Sgt. Mirza, Officer Espinal, and Officers John Doe 1–5)*

78.     Plaintiff repeats and realleges all preceding paragraphs as though fully set forth herein.

79.     Defendants seized, detained, and arrested Plaintiff without a warrant and without probable cause in violation of the Fourth and Fourteenth Amendments.

80.     Plaintiff displayed a valid DMV-issued medical tint exemption, which contained all identifying and validating information. No officer used any DMV-approved tint meter, obtained any tint reading, or otherwise conducted any lawful verification before removing Plaintiff from the vehicle and placing him under arrest.

81.     The officers' demand for a generic informational letter or the DMV mailing envelope, which is not required to validate an exemption, did not constitute probable cause and did not provide a lawful basis for arrest.

82.     No exigency existed, and no traffic offense or other lawful basis was cited at the scene to justify Plaintiff's arrest.

83.     Defendants' actions caused Plaintiff to be unlawfully detained, handcuffed, transported to a precinct, processed, and held without lawful justification.

84.     As a result, Plaintiff suffered loss of liberty, emotional distress, and other damages.

## SECOND CAUSE OF ACTION
### Fourth Amendment: Malicious Prosecution Under 42 U.S.C. § 1983
*(Against Sgt. Mirza, Officer Espinal, and Officers John Doe 1–5)*

85.     Plaintiff repeats and realleges all preceding paragraphs.

86.     Defendants initiated and caused the continuation of a criminal proceeding against Plaintiff for N.Y. Penal Law § 170.20 ("Possession of a Forged Instrument") despite having no basis to believe the tint exemption was forged, fraudulent, or invalid.

87.     At the precinct, officers incorrectly asserted that the exemption was "expired" based on numbers printed at the bottom, which were later confirmed by the DMV Medical Review Unit to be form identifiers, not expiration dates.

88.     Defendants submitted accusatory paperwork containing these false assertions, despite readily available avenues to verify the exemption's validity.

89.     The criminal proceeding terminated in Plaintiff's favor when all charges were dismissed and sealed pursuant to CPL § 160.50.

90.    Plaintiff suffered post-arraignment liberty restraints, repeated court appearances, emotional distress, and related harm.

91.    Defendants acted with malice or reckless disregard by pursuing prosecution despite lack of probable cause and readily available exculpatory information.

### THIRD CAUSE OF ACTION
### Fourteenth Amendment: Fabrication of Evidence / Denial of a Fair Trial
### Under 42 U.S.C. § 1983
*(Against Sgt. Mirza and Officer Espinal)*

92.    Plaintiff repeats and realleges all preceding paragraphs.

93.    Defendants knowingly or recklessly conveyed materially false information to prosecutors, including but not limited to false assertions that Plaintiff's DMV-issued tint exemption was invalid or expired, and they failed to disclose readily available exculpatory facts demonstrating its authenticity.

94.    Defendants omitted that no tint meter reading was taken, that Plaintiff presented a valid DMV-issued exemption, and that their seizure and arrest were based solely on subjective speculation.

95.    These fabricated or omitted statements were likely to influence prosecution decisions and did so, causing Plaintiff to endure liberty restraints, repeated court appearances, and emotional distress.

### FOURTH CAUSE OF ACTION
### Unlawful Seizure of Property Under 42 U.S.C. § 1983
*(Against Sgt. Mirza and Officers John Doe 1–5)*

96.    Plaintiff repeats and realleges all preceding paragraphs.

97.     After Plaintiff was handcuffed, Sgt. Mirza personally entered and drove the vehicle Plaintiff had been operating from the scene to the precinct, despite the absence of any hazard and the availability of standardized impound procedures or third-party retrieval.

98.     While in NYPD custody, the vehicle sustained damage, including a broken armrest hinge.

99.     Defendants seized the license plates from the vehicle without legal justification and vouchered them under an incorrect Penal Law code (PL 175.10), which was later voided.

100.    While the plates were withheld, Plaintiff was unable to lawfully operate the vehicle, depriving him of its use and causing financial and practical harm.

101.    The seizure and retention of the vehicle and plates were unreasonable and violated Plaintiff's Fourth Amendment rights.

### FIFTH CAUSE OF ACTION
### Failure to Intervene Under 42 U.S.C. § 1983
*(Against Officers John Doe 1–5)*

102.    Plaintiff repeats and realleges all preceding paragraphs.

103.    Officers John Doe 1–5 were present during Plaintiff's unlawful arrest, removal from the vehicle, inspection and seizure of the tint exemption, and the unreasonable seizure of the vehicle and plates.

104.    These officers had a realistic opportunity to intervene but failed to do so, thereby proximately causing the violations of Plaintiff's constitutional rights.

## SIXTH CAUSE OF ACTION
### Municipal Liability (Monell) Under 42 U.S.C. § 1983
*(Against Defendant City of New York)*

105.  Plaintiff repeats and realleges all preceding paragraphs.

106.  The constitutional violations were caused by the City's policies, customs, and/or deliberate indifference in training and supervision, including failures regarding:

    **a.** Objective DMV/terminal verification before arresting individuals for suspected forged plates or documents based on subjective appearance;

    **b.** Accurate transmission of both inculpatory and exculpatory information to prosecutors and correction of accusatory paperwork once exculpatory facts are known;

    **c.** Standardized, least-intrusive vehicle-impound procedures that do not involve officers personally driving vehicles without exigency, and adequate inventory/documentation controls.

107.  Before September 2024, the City had or should have had notice through lawsuits, CCRB/IAB complaints, and internal declination data that NYPD officers routinely arrested individuals based on subjective assessments of plate or document appearance without objective DMV verification. Despite such notice, the City failed to implement adequate corrective training or supervision.

108.  Alternatively, to the extent NYPD had written policies requiring verification and proper impound procedures, the City was deliberately indifferent in failing to train, supervise, or enforce them.

109.  The City's policies, customs, and failures to train and supervise were the moving force behind the constitutional violations suffered by Plaintiff.

## SEVENTH CAUSE OF ACTION
## False Arrest and False Imprisonment Under New York Law
*(Against Sgt. Mirza, Officer Espinal, and Officers John Doe 1–5)*

110.    Plaintiff repeats and realleges all preceding paragraphs.

111.    Defendants intentionally confined Plaintiff without consent and without privilege or probable cause.

112.    Plaintiff was aware of and subjected to the confinement, which lasted several hours and included being handcuffed, transported to a precinct, processed, and released on a Desk Appearance Ticket.

113.    The confinement was not privileged, as Plaintiff displayed a valid DMV medical exemption, no tint reading was taken, no crime or violation occurred, and no officer articulated any lawful basis for arrest at the scene.

114.    As a result, Plaintiff suffered loss of liberty, emotional distress, and other damages.

## EIGHTH CAUSE OF ACTION
## Malicious Prosecution Under New York Law
*(Against Sgt. Mirza, Officer Espinal, and Officers John Doe 1–5)*

115.    Plaintiff repeats and realleges all preceding paragraphs.

116.    Defendants initiated and continued a criminal proceeding against Plaintiff without probable cause, alleging N.Y. PL § 170.20 ("Possession of a Forged Instrument").

117.    Defendants misrepresented the tint exemption as "expired" or "invalid," despite the exemption's authenticity being objectively verifiable and later confirmed valid by the DMV Medical Review Unit.

118.    Defendants acted with actual malice or reckless disregard for the truth.

119.     The criminal proceeding terminated in Plaintiff's favor with all charges dismissed and sealed under CPL § 160.50.

120.     As a result, Plaintiff suffered post-arraignment liberty restraints, repeated court appearances, and emotional distress.

## NINTH CAUSE OF ACTION
### Negligence / Negligent Training, Supervision, and Retention
*(Against the City of New York)*

121.     Plaintiff repeats and realleges all preceding paragraphs.

122.     The City owed a duty to properly hire, train, supervise, and discipline NYPD officers, including training regarding:

      a.   verification of DMV-issued documents before arresting individuals for forged-instrument offenses;

      b.   the proper interpretation of DMV medical-tint exemptions;

      c.   accurate reporting and correction of errors in accusatory instruments;

      d.   lawful vehicle impound procedures and property-handling protocols; and

      e.   the duty to avoid unreasonable seizures of vehicles and license plates.

123.     The City breached these duties by acting with negligence, carelessness, and/or reckless disregard.

124.     The City's negligent hiring, training, supervision, and retention was a substantial factor in causing the constitutional and state-law violations suffered by Plaintiff.

## TENTH CAUSE OF ACTION
### Conversion (Property Damage / Unauthorized Taking)
*(Against Sgt. Mirza and Officers John Doe 1–5)*

125.     Plaintiff repeats and realleges all preceding paragraphs.

126. Defendants intentionally exercised dominion and control over the vehicle Plaintiff had been operating and its license plates, without consent or lawful justification.

127. Defendants wrongfully seized the license plates, mis-vouchered them under an incorrect Penal Law code, and withheld them for an extended period, depriving Plaintiff of the use of the vehicle.

128. While in NYPD custody, the vehicle sustained physical damage, including a broken armrest hinge.

129. As a result, Plaintiff suffered loss of use, property damage, and related harm.

## ELEVENTH CAUSE OF ACTION
### Trespass to Chattels
*(Against Sgt. Mirza and Officers John Doe 1–5)*

130. Plaintiff repeats and realleges all preceding paragraphs.

131. Defendants intentionally and without justification interfered with Plaintiff's possessory interest in the vehicle and license plates.

132. This interference included:

   a. entering and driving the vehicle without consent;

   b. towing or relocating the vehicle without necessity;

   c. damaging interior components; and

   d. unlawfully withholding the license plates.

133. As a result, Plaintiff suffered diminished use and enjoyment of the vehicle and related damages.

### TWELFTH CAUSE OF ACTION
### <u>Respondeat Superior Liability</u>
*(Against the City of New York)*

134.    Plaintiff repeats and realleges all preceding paragraphs.

135.    At all relevant times, the NYPD officers involved were acting within the scope of their employment with the City of New York.

136.    The City is vicariously liable for all state-law torts committed by its officers, including false arrest, false imprisonment, malicious prosecution, conversion, trespass to chattels, and negligence.


### <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff Charles Saldarriaga respectfully requests that this Court enter judgment in his favor and against Defendants, and grant the following relief:

A. **Compensatory Damages** in an amount to be determined at trial, including but not limited to:

   1. **Economic damages:** lost income or other pecuniary losses, property damage, and substitute transportation costs; and

   2. **Non-economic/general damages:** emotional distress, pain and suffering, humiliation, and loss of enjoyment of life;

B. **Nominal damages** against the individual Defendants, to the extent permitted by law (no punitive damages are sought against the City);

C. **Punitive damages**, where permitted by law, against the individual Defendants for their willful, wanton, or reckless conduct;

D. **Costs and Disbursements** of this action pursuant to Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920.

E. **Prejudgment and post-judgment interest** as allowed by law.

F. **Such other and further relief** as the Court deems just and proper.

G. **Reservation of fees:** Should counsel appear for Plaintiff in this action, Plaintiff reserves the right to seek reasonable attorney's fees under 42 U.S.C. § 1988.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

Dated:  Queens, New York
         November 26, 2025

Respectfully submitted,

*Charles Saldarriaga*

Charles Saldarriaga
*Pro Se* Plaintiff
1-20 Astoria Blvd Apt 4H
Astoria, New York 11102
(929) 789-2220
Charlesny09@yahoo.com

To: **CITY OF NEW YORK**
LAW DEPARTMENT
c/o Corporation Counsel
100 Church Street
New York, NY 10007

**Sergeant Umar B. Mirza**
NYPD 108th Precinct
5-47 50th Ave.,
Long Island City, NY, 11101

**Officer Francisco Espinal**
NYPD 108th Precinct
5-47 50th Ave.,
Long Island City, NY, 11101

**Officers John Doe 1-5**
(the names herein to be fictitious as they are currently unknown)
c/o New York City Police Department
One Police Plaza
New York, NY 10038

Revised 02.13.2025; Effective 02.17.2025

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

CHARLES SALDARRIAGA
1-20 Astoria Blvd Apt 4H
Astoria, NY 11102    Tel. 929-789-2220

## DEFENDANTS

THE CITY OF NEW YORK, SERGEANT UMAR B. MIRZA (Shield No. 4845), POLICE OFFICER FRANCISCO ESPINAL (Shield No. 20764); and OFFICERS JOHN DOE 1-5

**(b)** County of Residence of First Listed Plaintiff    Queens
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    New York
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

*Pro Se* Plaintiff

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | Liability | ☐ 368 Asbestos Personal | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract | ☐ 360 Other Personal | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | Protection Act |
| ☐ 195 Contract Product Liability | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application ☐ 465 Other Immigration Actions | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 550 Civil Rights ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☐ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C § 1983

Brief description of cause:
Civil Rights - Non-Prisoner

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____    DOCKET NUMBER _____

DATE _____    SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

## CERTIFICATION OF ARBITRATION ELIGIBILITY

Local Arbitration Rule 83.7 provides that with certain exceptions, actions seeking money damages only in an amount not in excess of $150,000, exclusive of interest and costs, are eligible for compulsory arbitration. The amount of damages is presumed to be below the threshold amount unless a certification to the contrary is filed.

Case is Eligible for Arbitration ☐

I, ___Charles Saldarriaga___ , counsel for ___Plaintiff___ , do hereby certify that the above captioned civil action is ineligible for compulsory arbitration for the following reason(s):

☐    monetary damages sought are in excess of $150,000.00 exclusive of interest and costs,

☐    the complaint seeks injunctive relief, or

☐    the matter is otherwise ineligible for the following reason:

## DISCLOSURE STATEMENT - FEDERAL RULES CIVIL PROCEDURE 7.1

Identify any parent corporation and any publicly held corporation that owns 10% or more or its stocks. Add an additional page if needed.

## RELATED CASE STATEMENT (Section VIII on the Front of this Form)

Please list all cases that are arguably related pursuant to Division of Business Rule 3 in Section VIII on the front of this form. Rule 3(a) provides that "A civil case is "related" to another civil case for purposes of this guideline when, because of the similarity of facts and legal issues or because the cases arise from the same transactions or events, a substantial saving of judicial resources is likely to result from assigning both cases to the same judge and magistrate judge." Rule 3(a) provides that "A civil case shall not be deemed "related" to another civil case merely because the civil case involves identical legal issues, or the same parties." Rule 3 further provides that "Presumptively, and subject to the power of a judge to determine otherwise pursuant to paragraph (b), civil cases shall not be deemed to be "related" unless both cases are still pending before the court."

## NEW YORK EASTERN DISTRICT DIVISION OF BUSINESS RULE 1(d)(3)

*If you answer "Yes" to any of the questions below, this case will be designated as a Central Islip case and you must select Office Code 2.*

| | | |
|---|---|---|
| 1. | Is the action being removed from a state court that is located in Nassau or Suffolk County? | ☐ Yes ☑ No |
| 2. | Is the action—not involving real property—being brought against United States, its officers or its employees AND the majority of the plaintiffs reside in Nassau or Suffolk County? | ☐ Yes ☑ No |
| 3. | If you answered "No" to all parts of Questions 1 and 2: | |
| | a. Did a substantial part of the events or omissions giving rise to claim or claims occur in Nassau or Suffolk County? | ☐ Yes ☑ No |
| | b. Do the majority of defendants reside in Nassau or Suffolk County? | ☐ Yes ☑ No |
| | c. Is a substantial amount of any property at issue located in Nassau or Suffolk County? | ☐ Yes ☑ No |
| 4. | If this is a Fair Debt Collection Practice Act case, was the offending communication received in either Nassau or Suffolk County? | ☐ Yes ☑ No |

(Note, a natural person is considered to reside in the county in which that person is domiciled; an entity is considered a resident of the county that is either its principal place of business or headquarters, of if there is no such county in the Eastern District, the county within the District with which it has the most significant contacts).

## BAR ADMISSION

I am currently admitted in the Eastern District of New York and currently a member in good standing of the bar of this court.

☐ Yes        ☐ No

Are you currently the subject of any disciplinary action (s) in this or any other state or federal court?

☐ Yes (If yes, please explain) ☐ No

I certify the accuracy of all information provided above.

Signature: _____

Revised 02.13.2025; Effective 02.17.2025