# EXHIBIT B

(Proposed First Amended Complaint)
Charles Saldarriaga v. City of New York, et al.,
25 Civ. 03669 (RPK)(JRC)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------X

CHARLES SALDARRIAGA,

                                    Plaintiff,

                - against -

THE CITY OF NEW YORK, SERGEANT UMAR B.
MIRZA, SERGEANT WILLIAM J. PLANETA, OFFICER
FRANCISCO ESPINAL, OFFICER OSCAR
HERNANDEZVASQUEZ, OFFICER JASON RIEGER,
AND OFFICER MATTHEW DZIUBELA

                                    Defendants.
--------------------------------------------------------------------------X

Index No.
25-cv-03669-RPK-JRC

**FIRST AMENDED
COMPLAINT**

**JURY TRIAL
DEMANDED**

Plaintiff CHARLES SALDARRIAGA, proceeding pro se, files this Complaint against The

City of New York, Sergeant Umar B. Mirza, Sergeant Detective William J. Planeta, Police Officer

Francisco Espinal, Police Officer Oscar Hernandezvasquez, Police Officer Jason Rieger, and

Police Officer Matthew Dziubela (collectively, "Defendants"), and alleges as follows.

## PRELIMINARY STATEMENT

1.      This action arises from Plaintiff's September 8, 2024, traffic stop, arrest, criminal

prosecution, seizure of the vehicle Plaintiff was authorized to operate, and seizure and retention of

that vehicle's license plates.

2.      Plaintiff alleges that officers from the New York City Police Department ("NYPD")

arrested him without probable cause; initiated criminal charges using false or recklessly misleading

allegations concerning a Department of Motor Vehicles ("DMV") medical window-tint exemption

and a purported tint-meter reading; and unreasonably seized and retained license plates, preventing

Plaintiff from lawfully operating the vehicle.

3. This is a civil-rights action seeking relief under 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the United States Constitution, and New York law.

## JURISDICTION AND VENUE

4. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 because Plaintiff brings claims under 42 U.S.C. § 1983 and the United States Constitution.

5. This Court has supplemental jurisdiction over Plaintiff's related New York-law claims under 28 U.S.C. § 1367.

6. Venue is proper in this District under 28 U.S.C. § 1391(b) because the relevant events occurred in Queens County, New York, within the Eastern District of New York.

## NOTICE OF CLAIM

7. Plaintiff timely served a Notice of Claim upon the City pursuant to N.Y. Gen. Mun. Law § 50-e.

8. The Supreme Court of the State of New York, Queens County, entered a stipulation and order deeming Plaintiff's Notice of Claim timely served nunc pro tunc.

9. More than thirty days have passed since service of the Notice of Claim, and the City has not adjusted or settled Plaintiff's claims.

10. Plaintiff appeared for and completed a hearing pursuant to N.Y. Gen. Mun. Law § 50-h.

11. This action is timely under N.Y. Gen. Mun. Law § 50-i.

## PARTIES

### A. Plaintiff Charles Saldarriaga

13. Plaintiff Charles Saldarriaga is a United States citizen who was at all relevant times a resident of Queens County in the State of New York.

2

## B. Defendant City of New York

14.    Defendant the City of New York (the "City") is a municipal corporation duly organized and existing under the laws of the State of New York. At all relevant times, Defendant City, acting through the NYPD, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline, retention, and conduct of all NYPD personnel. In addition, at all relevant times, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that NYPD personnel obey the laws of the United States and the State of New York.

## C. Defendant Sergeant Umar B. Mirza

15.    Defendant Sergeant Umar B. Mirza ("Sgt. Mirza") was an NYPD sergeant who, at all relevant times, acted under color of state law and within the scope of his employment. He is sued in his individual capacity under 42 U.S.C. § 1983 and New York law.

## D. Defendant Police Officer Francisco Espinal

16.    Defendant Police Officer Francisco Espinal ("P.O. Espinal") was, at all relevant times, employed by the NYPD and acted under color of state law within the scope of his employment. He is sued in his individual capacity under 42 U.S.C. § 1983 and New York law.

## E. Defendant Police Officer Oscar Hernandezvasquez

17.    Defendant Police Officer Oscar Hernandezvasquez ("P.O. Hernandezvasquez") was, at all relevant times, employed by the NYPD and acting under color of state law within the scope of his employment. He is sued in his individual capacity under 42 U.S.C. § 1983 and New York law.

### F.  Defendant Police Officer Jason Rieger

18.    Defendant Police Officer Jason Rieger ("P.O. Rieger") was, at all relevant times, employed by the NYPD and acted under color of state law within the scope of his employment. He is sued in his individual capacity under 42 U.S.C. § 1983 and New York law.

### G.  Defendant Police Officer Matthew Dziubela

19.    Defendant Former Police Officer Matthew Dziubela ("P.O. Dziubela") was, at all relevant times, employed by the NYPD and acted under color of state law within the scope of his employment. He is sued in his individual capacity under 42 U.S.C. § 1983 and New York law.

### H.  Defendant Sergeant Detective William J. Planeta

20.    Defendant Sergeant Det. William J. Planeta ("Sgt. Planeta") was, at all relevant times, employed by the NYPD and acted under color of state law within the scope of his employment. He is sued in his individual capacity under 42 U.S.C. § 1983 and New York law.

### FACTUAL ALLEGATIONS

21.    On September 8, 2024, Plaintiff was driving near 21st Street and Hoyt Avenue in Queens, New York.

22.    A marked NYPD patrol vehicle followed Plaintiff onto Astoria Boulevard South and activated its emergency lights.

23.    Plaintiff immediately pulled over near 20-98 Astoria Park South.

24.    Several NYPD officers exited the patrol vehicle and approached.

25.    P.O. Espinal approached the driver's side; P.O. Hernandezvasquez approached the passenger's side, and Sgt. Mirza stood on the driver's rear side.

4

26.     P.O. Espinal requested Plaintiff's license and registration. Plaintiff provided the requested documentation, which was current and valid.

27.     P.O. Espinal stated the reason Plaintiff was pulled over was because of the window tint.

28.     Plaintiff informed the officers that a DMV medical window-tint exemption was displayed on the windshield.

29.     P.O. Espinal examined the exemption from outside the vehicle, photographed it, and transmitted the photographs at Sgt. Mirza's direction.

30.     Sgt. Mirza asked Plaintiff for paperwork or email related to the exemption.

31.     Plaintiff explained that the informational letter and mailing envelope were at home.

32.     Sgt. Mirza contacted Sgt. Planeta by telephone regarding Plaintiff, the vehicle, the license plates, and the window-tint exemption.

33.     Sgt. Mirza transmitted photographs of the exemption to Sgt. Planeta and discussed the exemption and the license plates affixed to the vehicle.

34.     Sgt. Planeta reviewed the transmitted information and provided information and guidance to Sgt. Mirza during the stop.

35.     Sgt. Mirza examined the vehicle's license plates and discussed their markings and mounting holes during his consultation with Sgt. Planeta.

36.     After consulting with Sgt. Planeta, Sgt. Mirza directed Plaintiff to be arrested.

5

37.     Sgt. Mirza told Plaintiff that, if Plaintiff could produce additional documentation concerning the exemption, the officers would verify it.

38.     When Plaintiff asked why he was being arrested, P.O. Espinal responded "we'll tell you when we get to the precinct."

39.     Sgt. Mirza asserted that the window-tint exemption "was no good."

40.     Plaintiff was placed in the rear of a NYPD patrol vehicle.

41.     Sgt. Mirza directed P.O. Dziubela to drive the vehicle Plaintiff had been operating to the 114th Precinct.

42.     Plaintiff was not offered an opportunity to secure the vehicle or arrange for its removal from the scene. Officers instead told Plaintiff that his brother, the vehicle's registered owner, could retrieve it from the precinct.

43.     Plaintiff was transported to the 114th Precinct, where he was fingerprinted, photographed, and questioned.

44.     While Plaintiff remained at the precinct, Sgt. Mirza showed the window-tint exemption to other officers and questioned its validity.

45.     P.O. Espinal vouchered the vehicle for safekeeping with Sgt. Mirza's approval.

46.     At the precinct, P.O. Espinal stated that the window-tint exemption displayed on the vehicle was invalid based on a notation appearing on the bottom of the exemption.

47.     Plaintiff's brother arrived at the precinct to retrieve the vehicle, but officers refused to release it.

6

48.     At approximately 12:39 a.m. on September 9, 2024, Plaintiff was released from NYPD custody on a Desk Appearance Ticket ("DAT").

49.     The DAT directed Plaintiff to appear in Queens Criminal Court on September 25, 2024.

50.     The criminal proceeding was docketed as People v. Sandarriaga, Docket No. CR-032268-24QN, Queens Criminal Court.

51.     Plaintiff later returned to the precinct to pick up the vehicle.

52.     The vehicle was released, but Plaintiff observed new damage inside the vehicle, including a broken armrest hinge.

53.     Plaintiff reported the damage to the Precinct and was instructed to file a complaint with the Civilian Complaint Review Board ("CCRB").

54.     After returning home, Plaintiff discovered that the vehicle's license plates had been removed.

55.     Because the license plates had been removed, Plaintiff could not lawfully operate it on public roads.

56.     Plaintiff returned to the precinct by rideshare to determine the basis for the seizure of the license plates.

57.     Plaintiff learned that P.O. Espinal had also vouchered the license plates as arrest evidence under Property Clerk Voucher No. 4001144829, which Sgt. Mirza approved.

58.     The voucher identified N.Y. Penal Law § 175.10 (Falsifying Business Records in the First Degree), although Plaintiff was never charged with that offense.

7

59.    Plaintiff made repeated attempts, both in person and by telephone, to recover the license plates.

60.    NYPD personnel informed him that the plates would not be released without Sgt. Mirza's authorization and that he otherwise would need to obtain replacement plates from the DMV.

61.    The DMV informed Plaintiff that replacement plates could not be issued without a police report.

62.    NYPD personnel refused to provide one because the plates had been vouchered as evidence.

63.    Plaintiff continued contacting Sgt. Mirza and P.O. Espinal by telephone and in person.

64.    Sgt. Mirza ultimately voided Property Clerk Voucher No. 4001144829, resulting in the return of the original license plates.

65.    The seizure and retention of the license plates deprived Plaintiff of the lawful use of the vehicle and caused transportation expenses, lost time, and other damages.

66.    Plaintiff appeared in Queens Criminal Court on September 25, 2024, December 2, 2024, and January 15, 2025.

67.    The accusatory instrument charged Plaintiff with criminal possession of a forged instrument in the third degree under N.Y. Penal Law § 170.20 and one window-tint violation under N.Y. Veh. & Traf. Law § 375(12-a)(1).

68.     The accusatory instrument included allegations concerning the window-tint exemption and a purported tint-meter reading.

69.     Plaintiff was not convicted of any crime arising from September 8, 2024, arrest and all charges were dismissed and sealed on January 15, 2025.

70.     Body-worn camera footage obtained by Plaintiff does not depict any tint-meter examination of the vehicle before Plaintiff's arrest and removal from the scene.

71.     As a direct result of Defendants' conduct, Plaintiff suffered emotional distress, humiliation, embarrassment, loss of liberty, property damage, loss of use of the vehicle and license plates, transportation expenses, lost time, and other damages.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
**False Arrest and Unlawful Detention Under 42 U.S.C. § 1983**
*(Against the Individual NYPD Defendants)*

72.     Plaintiff repeats and realleges all preceding paragraphs.

73.     The Individual NYPD Defendants, through their respective actions, participated in, directed, authorized, continued, or otherwise caused Plaintiff's warrantless arrest and unlawful detention without probable cause, in violation of the Fourth Amendment.

74.     Before arresting Plaintiff, Defendants did not verify the window-tint exemption displayed on the vehicle with the DMV, conduct a documented tint-meter examination, or otherwise establish probable cause to believe Plaintiff had committed a forgery-related offense.

75.     At no point before Plaintiff's arrest and removal from the scene did any officer use a tint meter, obtain a tint-percentage reading, or provide Plaintiff with a tint-percentage reading.

76.     Sgt. Planeta reviewed photographs of the window-tint exemption, discussed the exemption and the license plates with Sgt. Mirza, and provided information and guidance that Sgt. Mirza relied upon in directing Plaintiff's arrest.

77.     The officers' demand for a generic informational letter or the DMV mailing envelope, which is not required to validate a window-tint exemption, did not constitute probable cause or otherwise provide a lawful basis for Plaintiff's arrest.

78.     The criminal complaint alleged that a tint-meter examination yielded a five-percent light-transmittance reading. Plaintiff alleges that no such examination occurred before his arrest and that no contemporaneous body-worn-camera footage or other documentation known to Plaintiff supports that allegation.

79.     Defendants lacked probable cause to arrest Plaintiff based on the medical window-tint exemption, the asserted tint violation, or the information known to them at the time of the arrest.

80.     As a direct and proximate result of Defendants' conduct, Plaintiff was handcuffed, transported to the 114th Precinct, processed, detained, and released on a Desk Appearance Ticket.

81.     Plaintiff suffered damages as a result.

## SECOND CAUSE OF ACTION
**Fourth Amendment: Malicious Prosecution Under 42 U.S.C. § 1983**
*(Against the Individual NYPD Defendants)*

82.     Plaintiff repeats and realleges all preceding paragraphs.

83.     The Individual NYPD Defendants initiated, encouraged, continued, or otherwise caused the criminal prosecution of Plaintiff for Criminal Possession of a Forged Instrument in the Third Degree, in violation of N.Y. Penal Law § 170.20, despite lacking probable cause to believe the window-tint exemption displayed on the vehicle was forged, fraudulent, or invalid.

84.     At the precinct, Defendant P.O. Espinal asserted that the window-tint exemption was invalid because of the notation appearing on the exemption, despite readily available means to verify the exemption through the DMV.

85.     Defendants initiated or caused accusatory instruments and related criminal charges to be pursued despite readily available means to verify the exemption and despite lacking probable cause.

86.     The criminal proceedings terminated in Plaintiff's favor when all charges were dismissed and sealed pursuant to CPL § 160.50.

87.     Plaintiff suffered post-arraignment liberty restraints, repeated court appearances, emotional distress, and related harm.

88.     Defendants acted intentionally, maliciously, or with reckless disregard for Plaintiff's rights by initiating or continuing the prosecution despite lacking probable cause and despite the availability of readily obtainable exculpatory information.

## THIRD CAUSE OF ACTION
### Fourteenth Amendment: Fabrication of Evidence / Denial of a Fair Trial
### Under 42 U.S.C. § 1983
*(Against Sgt. Mirza and P.O. Espinal)*

89.     Plaintiff repeats and realleges all preceding paragraphs.

90.     Defendants knowingly or recklessly conveyed materially false information to prosecutors, including false assertions concerning the authenticity or validity of the window-tint exemption, while failing to disclose readily available exculpatory information concerning the exemption.

91.    Defendant P.O. Espinal swore that he observed a forged window-tint exemption affixed to the vehicle, despite the exemption not having been verified through the DMV's Medical Review Unit before forgery-related charges were initiated.

92.    Defendants represented that a tint-meter examination had been performed showing five-percent light transmittance, despite the absence of any tint-meter examination before Plaintiff's arrest and removal from the scene.

93.    These fabricated or omitted statements were likely to influence prosecution decisions and did so, causing Plaintiff to endure liberty restraints, repeated court appearances, and emotional distress.

**FOURTH CAUSE OF ACTION**
**Unlawful Seizure of Property Under 42 U.S.C. § 1983**
*(Against Sgt. Mirza, P.O. Espinal, and Former P.O. Dziubela)*

94.    Plaintiff repeats and realleges all preceding paragraphs.

95.    After Plaintiff was handcuffed, P.O. Dziubela personally entered and drove the vehicle Plaintiff had been operating from the scene to the 114th Precinct.

96.    While in NYPD custody, the vehicle sustained damage, including a broken armrest hinge.

97.    P.O. Espinal vouchered the vehicle for safekeeping and separately vouchered the vehicle's license plates as arrest evidence. Sgt. Mirza approved or authorized those vouchers, including the continued retention of the license plates under N.Y. Penal Law § 175.10, a designation that was later voided.

98.    While the license plates were withheld, Plaintiff was unable to lawfully operate the vehicle, resulting in loss of use, transportation expenses, and related damages.

12

99.     The seizure and continued retention of the license plates, together with the seizure and continued deprivation of Plaintiff's possessory interest in the vehicle, constituted an unreasonable seizure in violation of the Fourth Amendment.

## FIFTH CAUSE OF ACTION
### Failure to Intervene Under 42 U.S.C. § 1983
*(Against Defendants P.O. Hernandezvasquez, P.O. Rieger, P.O. Dziubela)*

100.    Plaintiff repeats and realleges all preceding paragraphs.

101.    Defendants P.O. Hernandezvasquez, P.O. Rieger, and P.O. Dziubela observed or were aware of Plaintiff's arrest, continued detention, and the seizure of the vehicle and license plates and had a realistic opportunity to intervene to prevent or mitigate the constitutional violations alleged herein.

102.    Despite having a realistic opportunity to intervene, Defendants failed to do so, thereby proximately causing or contributing to the deprivation of Plaintiff's constitutional rights and the resulting damages.

## SIXTH CAUSE OF ACTION
### Municipal Liability (Monell) Under 42 U.S.C. § 1983
*(Against Defendant City of New York)*

103.    Plaintiff repeats and realleges all preceding paragraphs.

104.    The constitutional violations suffered by Plaintiff were caused by the City of New York's policies, customs, practices, or deliberate indifference, including its failure to adequately train, supervise, and discipline NYPD officers in the specific areas identified below.

105.    Verification procedures for DMV-issued documents, including medical window-tint exemptions, before arresting individuals for suspected forgery-related offenses.

13

106.    The preparation of accurate arrest paperwork and the correction of inaccurate information when exculpatory information is readily available.

107.    Lawful vehicle impound, inventory, and property-vouchering procedures, including appropriate safeguards governing officer custody and transport of seized vehicles.

108.    Upon information and belief, the City failed to adequately train and supervise NYPD officers in these areas, creating a foreseeable risk of unlawful arrests, prosecutions, and property seizures.

109.    To the extent such policies existed, the City failed to adequately supervise or enforce compliance with them.

110.    These policies, customs, and failures to train and supervise were the moving force behind the constitutional violations suffered by Plaintiff.

## SEVENTH CAUSE OF ACTION
### False Arrest and False Imprisonment Under New York Law
*(Against the Individual NYPD Defendants)*

111.    Plaintiff repeats and realleges all preceding paragraphs.

112.    Defendants intentionally confined Plaintiff without consent and without privilege or probable cause.

113.    Plaintiff was aware of and subjected to the confinement, which lasted several hours and included being handcuffed, transported to a precinct, processed, and released on a Desk Appearance Ticket.

114.    The confinement was not privileged because Plaintiff displayed a medical window-tint exemption on the vehicle, Defendants did not verify the exemption through the DMV before arresting Plaintiff, no documented tint-meter examination was conducted before Plaintiff's arrest, and Defendants otherwise lacked probable cause to arrest Plaintiff.

14

115.    As a result, Plaintiff suffered loss of liberty, emotional distress, and other damages.

**EIGHTH CAUSE OF ACTION**
**Malicious Prosecution Under New York Law**
*(Against Sgt. Mirza, Sgt. Planeta, and P.O. Espinal)*

116.    Plaintiff repeats and realleges all preceding paragraphs.

117.    The Individual NYPD Defendants initiated, encouraged, continued, or caused the criminal prosecution of Plaintiff without probable cause by causing Plaintiff to be charged with Criminal Possession of a Forged Instrument in the Third Degree, in violation of N.Y. Penal Law § 170.20.

118.    In doing so, Defendants represented, or caused it to be represented, that the window-tint exemption displayed on the vehicle was invalid or otherwise not authentic, despite the exemption being objectively verifiable through the DMV.

119.    Defendants acted intentionally, maliciously, or with reckless disregard for Plaintiff's constitutional and statutory rights.

120.    The criminal proceeding terminated in Plaintiff's favor with all charges dismissed and sealed under CPL § 160.50.

121.    As a result, Plaintiff suffered post-arraignment liberty restraints, repeated court appearances, emotional distress, and other damages.

**NINTH CAUSE OF ACTION**
**Conversion and Interference with Possessory Rights**
*(Against Sgt. Mirza and P.O. Espinal)*

122.    Plaintiff repeats and realleges all preceding paragraphs.

15

123.    Defendants intentionally exercised unauthorized dominion and control over the license plates affixed to the vehicle Plaintiff was operating and interfered with Plaintiff's lawful possessory interest in the vehicle, without consent or lawful justification.

124.    Defendants seized, vouchered, approved, retained, and refused to release the license plates without lawful justification, thereby depriving Plaintiff of the lawful use of the vehicle.

125.    While the vehicle was in NYPD custody, it sustained physical damage, including a broken armrest hinge.

126.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered loss of use, property damage, substitute transportation expenses, and other damages.

### TENTH CAUSE OF ACTION
**Trespass to Chattels**
*(Against Sgt. Mirza, P.O. Espinal, and Former P.O. Dziubela)*

127.    Plaintiff repeats and realleges all preceding paragraphs.

128.    Defendants intentionally and without lawful justification interfered with Plaintiff's lawful possessory interest in the vehicle he had been operating and the license plates affixed thereto.

129.    This interference included:

    a.    entering, taking custody of, and operating the vehicle;

    b.    taking custody of and transporting the vehicle to the 114th Precinct;

    c.    damaging interior components while in NYPD custody; and

    d.    seizing, retaining, and refusing to release the license plates without lawful justification.

130.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered loss of use, property damage, substitute transportation expenses, and other damages.

### ELEVENTH CAUSE OF ACTION
*Respondeat Superior*
*(Against the City of New York)*

131.    Plaintiff repeats and realleges all preceding paragraphs.

132.    At all relevant times, the NYPD officers involved were acting within the scope of their employment with the City of New York.

133.    The City is vicariously liable for all state-law torts committed by its officers, including false arrest, false imprisonment, malicious prosecution, conversion, trespass to chattels, and negligence.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment against Defendants as follows:

a)  Compensatory damages in an amount to be determined at trial;

b)  Punitive damages to the extent permitted by law;

c)  Costs and disbursements under Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920;

d)  Pre- and post-judgment interest as permitted by law;

e)  Reasonable attorney's fees pursuant to 42 U.S.C. § 1988 should counsel appear on Plaintiff's behalf during the course of this litigation; and

f)  Such other and further relief as the Court deems just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by

jury on all issues so triable.


Dated:  Queens, New York
        August 14, 2026

Respectfully submitted,

_____

Charles Saldarriaga
*Plaintiff Pro se*
1-20 Astoria Blvd Apt 4H
Astoria, New York 11102
charlesny09@yahoo.com

18